REGINA MUSIC BOX CO. v. F. G. OTTO & SONS et al. (three cases).

(Circuit Court, D. New Jersey. February 18, 1902.)

1. PATENTS—INFRINGEMENT—ACCOUNTING FOR DAMAGES.

Where it appears that, in infringing complainant's patent, defendants acted with full knowledge, and in wanton and willful disregard, of complainant's rights, every question of doubt, on an accounting for damages, should be resolved against the infringer.

2. SAME.

Where, on an accounting for damages for the manufacture and sale by defendants of infringing music boxes, it appeared that the patent was the foundation patent for that class of automatic instruments which it described and claimed; that complainant had a monopoly of their manufacture, and was able to supply those sold by defendants; and that defendants' infringement was wanton and willful,—it will be presumed that but for the infringement all the instruments they sold would have been purchased from complainant, either by defendants or their customers; and this presumption is not overcome by evidence showing that some of them were supplied on orders from customers who dealt exclusively with defendants.

In Equity. Suits for infringement of patents. See 106 Fed. 78. On exceptions by defendants to master's report, stating account for damages.

The following is the report of the master:

The above-entitled causes having been referred to me as master by decretal orders made at a stated term of the United States circuit court for the district of New Jersey, in the Third circuit, on the 29th day of January, 1901, with instructions to ascertain and report to the court an account of the gains, profits and advantages which the said defendants in each of the above-entitled causes have realized through their unlawful infringement of complainant's letters patent Nos. 569,233, 596,393, 621,025, together with the damages which the complainant has sustained thereby, I beg leave to report:

That the respective parties appeared before me by their counsel,—Antonio Knauth, Esq., of counsel for complainant, and Edwin H. Brown, Esq., and Donald Campbell, Esq., of counsel with defendants,—and by stipulation the testimony in the three several accountings was taken simultaneously, said testimony and the exhibits referred to therein being annexed hereto. The complainant duly waived any claim for profits or damages which the defendants may have gained by reason of the infringement in cases Nos. 2 and 3 of the above-entitled causes, and also duly waived the recovery of any profits in case No. 1, and therefore the issue to be passed upon by me, is what damages may have been sustained by the complainant by reason of the infringement by defendants in suit No. 1, F. G.

Otto & Sons and Gustav Otto, of letters patent No. 569.233, the letters patent included therein.

By stipulation the record before the court in each of the causes on which the several decrees were made, was made a part of the record upon this accounting, and from this record and the testimony taken herein, it appears that the defendants, F. G. Otto & Sons, a corporation, and Gustav Otto had full knowledge that the complainant, who is engaged in the manufacture of music boxes, had the sole right to manufacture and sell the interchangeable automatic music boxes covered by said letters patent No. 569,233, and that the infringement of these rights by said defendants was a wanton and willful disregard of the property rights of complainant therein. The defendants, being manufacturers of music boxes, commenced the manufacture of the infringing instrument early in the spring of 1899, and made the first sale thereof on the 21st day of December, 1899, the last sale being on the 9th day of October, 1900. The several actions herein were commenced on the 15th day of January, 1900, and the decrees made the 29th day of January, 1901. In the early part of December, 1900, the defendant Gustav Otto had a conference at Leipsic with Mr. Riessner, the patentee of the foundation patent, No. 569,233, relating to its use by the defendants in the United States, and also had a conversation with a representative of complainant about this time concerning the said letters patent. Moreover it appears that although a voluminous answer was interposed by the defendants herein, that no testimony whatsoever was taken to sustain the same, and no argument was made on the hearing by the defendants. From the circumstances above set forth, there appears to be no doubt but that the infringements herein were made by both defendants with full knowledge of complainant's rights and were a wanton and willful disregard of the same, and in such a case every doubt and difficulty arising on the accounting should be resolved against the infringer. Rubber Co. v. Goodyear, 9 Wall. 803, 19 L. Ed. 566; Creamer v. Bowers (C. C.) 35 Fed. 206, 208; Rose v. Hirsh, 36 C. C. A. 132, 94 Fed. 177, 51 L. R. A. 801.

The product of defendants' infringement of the several letters patent herein was the instrument in evidence known as "Complainant's Exhibit, Defendants' Instrument." This was the first instrument sold by the defendants, and was purchased by Mr. J. C. Breckinridge on the 21st day of December, 1899, from M. J. Paillard & Co., $300 being paid by the purchaser to Paillard & Co. for the same. The instrument was billed by defendants to Paillard & Co. likewise on the 21st day of December, 1899. Defendants manufactured thirty-six instruments similar to the one sold by Paillard & Co., selling thirty-five of the same to various purchasers, the remaining one being sent to Germany, where it now is. This instrument is an automatic interchangeable music box, and is fully described in the record before the court on the hearing in the above-stated causes.

Complainant has offered in evidence a music box manufactured by it and known as the Sublima Corona, and has offered testimony which proves that there is a substantial identity between the Sublima Corona and the defendants' infringing instrument, the testimony showing that the test of the cost of instruments of this nature—that is of automatic interchangeable instruments—depends almost entirely upon the diameter of the tune disk used therein, as the whole mechanism is proportioned in accordance therewith. The diameter of the tune disks in the defendants' instrument is twenty and one-half inches,—of the Sublima Corona twenty and three-fourth inches. Moreover it appeared that the Sublima Corona contained a substantial embodiment of all of the features of the claims of the three letters patent which defendants infringed. The complainant has proved by satisfactory evidence that the cost of the Sublima Corona instrument, including the material, wages paid, the charges for general factory and selling expenses, and an additional fifteen per cent. on the cases alone, was $106.81, and that this cost price was the sole basis for the payment of wages to its employés in the manufacture of the same, and that wages were actually paid in accordance with this scale; and moreover that the selling price of this instrument was based upon the cost so ascertained

by the complainant. The complainant produced two books, made about June, 1899, containing a detailed calculation of the cost of this instrument, showing the cost to be as above stated, and gave competent evidence to sustain the entries made therein. The selling price of this instrument to the trade varied between $173.50 before February 1, 1900, the lowest selling price, and $200 thereafter; but complainant concedes that the latter figure was not always used for sales to the trade after February 1, 1900, and therefore for the purposes of this accounting the lower price of $173.50 must be presumed to have been the usual selling price of such instruments. From this selling price certain discounts were allowed to the trade, six per cent. for cash payment in ten days and an additional five per cent. whenever more than $1,000 was purchased, and I find that in calculating the selling price of said instrument, so far as this case is concerned, that only the five per cent. discount should be allowed. It was complainant's custom to allow other discounts for sales made to customers where an amount was sold larger than is shown by the proofs herein, and these last-mentioned discounts therefore cannot be considered in estimating the net selling price of the complainant's instrument, the Sublima Corona. It further appears from the testimony taken herein that the complainant has the exclusive control of the sale and manufacture of these instruments; that the complainant had manufactured and sold a great many of the same, and had the capacity to manufacture thirty-five other instruments if it had been called upon to do so by the defendants, or the persons to whom these thirty-five instruments were sold by the defendant F. G. Otto & Sons. The testimony of the defendant F. G. Otto, the president of the defendant company, admits specifically that at the time the infringing instruments were sold by the defendant F. G. Otto & Sons, the complainant was the only manufacturer of automatic interchangeable music boxes. Therefore such instruments could only lawfully be purchased from the complainant, which maintained a close monopoly in the manufacture and sale of the same. The introduction of these instruments had displaced to a very great extent the music boxes made prior thereto by complainant, so that two-thirds of the product of complainant's factory is of the automatic interchangeable music box variety. I therefore find that the patent involved in the first suit (No. 1) was a foundation patent for that class of automatic music boxes which it describes and claims; that the machine is claimed by it as an entire organism which it covers by broad and comprehensive claims. It is not a patent for an improvement merely, but a patent for an entirely new class of machines, and it is this patent which gave the whole salable value to the machine. The patents in suits Nos. 2 and 3 are for improvements in such a machine as claimed in the patent in suit No. 1, but did not add anything to the value of the machine which could be assessed in money, and the testimony as to the great commercial value of the invention was confined to the letters patent No. 569,233, the infringement thereof being the cause of action in suit No. 1. McDonald v. Whitney (C. C.) 39 Fed. 466.

The rule of law to be applied to the facts as hereinbefore set forth is settled in Rose v. Hirsh, 36 C. C. A. 132, 94 Fed. 177, 51 L. R. A. 801 (circuit court of appeals, Third circuit). This case follows Creamer v. Bowers (C. C.) 35 Fed. 206, 208; Sargent v. Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021. 29 L. Ed. 67; and the rule is clearly stated in Walk. Pat. (3d Ed.) par. 563.

The substantial identity of complainant's instrument, the Sublima Corona, with the instrument sold by defendants being clearly shown, together with the cost and selling price of complainant's instrument, and also the wanton and willful disregard of complainant's rights by defendants, together with the close monopoly held by complainant in the manufacture of this instrument, and its ability to produce thirty-five additional instruments of the kind known as the Sublima Corona, the only point remaining to be considered is whether defendant would have purchased these instruments from complainant. Many authorities have been cited by defendant upon this point for the purpose of absolving defendant from any liability by reason of the sale to various individuals and corporations of the infrin-

ging instrument. A careful review of these authorities leads to the conclusion that while there are certain general principles of law applicable generally to this subject, yet each case must be decided in view of the peculiar circumstances pertaining thereto; and that there cannot in the nature of things be any one rule of damages which will equally apply to all cases, the mode of ascertaining actual damages depending on the peculiar nature of the monopoly granted (Seymour v. McCormick, 16 How. 489, 14 L. Ed. 1024), keeping in view, when applicable, the principles set forth in Creamer v. Bowers (C. C.) 35 Fed. 206, and followed in Rose v. Hirsh, supra, that in cases of wanton infringement any doubt arising in respect to the sufficiency of the evidence to warrant a finding of the amount of damages, must be resolved against the infringer. See, also, Walk. Pat. (3d Ed.) par. 563.

It appears from defendant's statement of sales that of the thirty-five boxes sold by defendants at least twenty-five were, according to the testimony of defendant, billed to parties who had an agreement with the defendant corporation to deal only with it in the purchase of music boxes, and while this agreement was not proven, or shown to have reference to the interchangeable automatic boxes, yet defendants urge that the fact of its exclusive right to sell music boxes to these parties, clearly shows that said parties would not have purchased the boxes from complainant, and therefore that defendants cannot be held liable for more than nominal damages. This theory rests upon the assumption that the burden is on complainant to prove that the parties to whom the defendant corporation sold the infringing instruments, would have purchased the same from complainant; while the cases cited above are decided on the theory that the defendants would have bought the infringing instruments from the complainant, because complainant had the exclusive right to sell and manufacture the same, actually was doing so, and the defendant had full knowledge of these facts. It is reasonable to assume that when defendant's customers ordered an automatic interchangeable instrument from defendant they supposed defendant would procure the same from complainant, as it will not be presumed that these customers contemplated that the defendant corporation would act unlawfully in supplying its customers with the automatic interchangeable music box desired by them. A court of equity will never presume that a contract relating to the exclusive purchase by its customers from defendant, contemplated the doing of an illegal act by defendant. Such a contract would be unlawful and inequitable. And the same reasoning will also apply to the other customers of the defendant corporation not included in the so-called exclusive agreement, the presumption being that these customers desired the defendant corporation to supply them with an automatic interchangeable music box procured by the defendant corporation from complainant, and which they could lawfully use. There is not sufficient evidence offered by the defendant to rebut this presumption.

Complainant contends that the defendants should be held responsible for the loss by complainant of the tune disks usually sold with the Sublima Corona, either by the complainant or its selling agent, upon the ground that by the sale of each of the thirty-five instruments by defendant corporation, a sale of one set of twelve disks for each instrument by complainant was prevented. It is admitted, however, that the tune disks used in the Sublima Corona instruments could also be used in other instruments made by the complainant. The evidence is not sufficiently clear to hold the defendants responsible for damages sustained by the complainant from the loss of the sale of tune disks.

I further find that if the defendant corporation had purchased thirty-five boxes of the Sublima Corona style from the complainant, the total charge for the same on the basis of $173.50 for each instrument, after deducting the discounts allowed on such a sale, would be $5,768.88. I further find that the total cost of thirty-five Sublima Corona music boxes at $106.81 for each instrument would be $3,738.35. I further find that the difference between the total net selling price and the total cost is $2,030.53.

From the foregoing facts I find as a conclusion of law that the com-

plainant, the Regina Music Box Company, is entitled to recover of the defendant F. G. Otto & Sons and the defendant Gustav Otto the sum of $2,030.53 damages in case No. 1, together with the costs and disbursements on this accounting, and in cases Nos. 2 and 3 only nominal damages against the defendant F. G. Otto & Sons.

Briesen & Knauth (Antonio Knauth, of counsel), for complainant.

Dickerson & Brown (Edwin Brown and Donald Campbell, of counsel), for defendants.

GRAY, Circuit Judge. A careful reading of the master's report in these cases, and consideration of the exceptions thereto by defendants, and the motion of complainant for an increase of the damages awarded, and of the arguments by counsel in support of said exceptions and motion, convinces me that the said report should in all things be confirmed, and that the complainant is entitled to recover of the defendants, F. G. Otto & Sons and Gustav Otto, the sum of $2,030.53, the damages in case No. 1, together with the costs and disbursements of the accounting, and in cases Nos. 2 and 3 nominal damages against the defendant F. G. Otto & Sons.

Let a decree be so drawn.